Filed 5/31/13  Roselli v. SEIU CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SAL ROSSELLI et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION et al.,<br><br>        Defendants and Appellants. | A133299, A133539, A133896<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-508420) |

Plaintiffs Sal Rosselli, John Borsos, Ralph Cornejo, Angela Glasper, Beverly Griffith, Jan Harris, and Irma Dufelmeier were all participants in the formation of the National Union of Healthcare Workers (NUHW), which competes for union membership with a California affiliate of defendant Service Employees International Union (SEIU). Individual defendants Andy Stern, Anna Burger, Mary Kay Henry, David Regan, and Eliseo Medina are present or former SEIU officers. Plaintiffs sued the defendants for alleged acts of assault, battery, intimidation, threat, and coercion by SEIU members in the context of an ongoing labor dispute. The trial court granted defendants' special motion to strike the first amended complaint (FAC) under Code of Civil Procedure section 425.16 (section 425.16), known as the anti-SLAPP statute,[1] and awarded defendants attorney fees and costs as the prevailing party on the motion.

---

[1] "SLAPP" is an acronym for "strategic lawsuits against public participation." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85.)

We reverse the orders granting the special motion to strike and fee award, finding plaintiffs' claims did not arise from acts protected by the anti-SLAPP statute, and we dismiss as moot defendants' cross-appeal from the fee award.

## I. BACKGROUND

### A. *Plaintiffs' First Amended Complaint*

The FAC alleged three causes of action against defendants:  (1) violation of Civil Code section 51.7, (2) violation of Civil Code section 52.1, and (3) assault.  Civil Code section 51.7, entitled "Freedom from violence or intimidation," provides in relevant part persons in California "have the right to be free from any *violence, or intimidation by threat of violence*, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute . . . ."  (Civ. Code, § 51.7, subd. (a), italics added.)  Civil Code section 52.1 authorizes civil damages and injunctive relief for individuals whose exercise of state or federal constitutional rights has been interfered with, or attempted to be interfered with, "by *threats, intimidation, or coercion*."  (Civ. Code, § 52.1, subds. (a), (b), italics added.)  A cause of action for assault requires that defendants demonstrate an unlawful intent to inflict immediate injury on the plaintiff.  (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1603–1604; CACI No. 1301.)

The operative factual allegations of the FAC were set forth in 47 paragraphs incorporated by reference into each of the three causes of action.  Of these 47 paragraphs, 25 alleged facts pertaining to specific acts of assault, battery, intimidation, threat, and coercion directed at plaintiffs and other NUHW supporters by persons purportedly affiliated with the SEIU, occurring between June 2008 and January 2011.[2]  None of the

---

[2] Plaintiffs alleged, inter alia, (1) they were placed under constant surveillance at the SEIU convention in 2008, refused use of the convention center parking lot, and forced to walk long distances to get into the convention; (2) defendants hired armed security guards who surveiled, videotaped, and intimidated them in December 2008 and January 2009; (3) in February 2009, SEIU agents followed plaintiff Griffith everywhere she went at her workplace, yelled at her, and "got in [her] face"; (4) SEIU agents barged into two meetings of NUHW supporters in public parks, interrupted the meetings, and

specific acts were alleged to have been personally committed by any of the defendants. Another 11 of the 47 paragraphs discussed the careers, union activism, and accomplishments of the seven plaintiffs, and the origins of the SEIU affiliate union representing California health care workers—SEIU-United Healthcare Workers West (UHW-W)—in which five of the plaintiffs had been either officers or activists.

The labor dispute between plaintiffs and defendants was described in three paragraphs of the FAC as follows: "32. Starting in 2006, differences of opinion arose between the leaders of UHW-W [SEIU affiliate representing California health care workers, formed in 2005 by merger between SEIU Local 250 in Northern California and Local 399 in Southern California], including Plaintiffs . . . and Defendant SEIU and the individual Defendants herein. As a result, from 2006, until January 27, 2009, there was mounting tension between the UHW-W leadership, including Plaintiffs, and all Defendants. Starting in 2006, Defendant Stern and his fellow Defendants considered Plaintiff[s] Rosselli, Borsos and Cornejo to be 'enemies.' [¶] . . . [¶] 39. On January 27, 2009, Defendants Stern and SEIU summarily terminated the employment of Plaintiffs Rosselli, Borsos and Cornejo. [¶] 40. Following their termination from employment, Plaintiffs Rosselli, Borsos and Cornjeo met with 80 other elected leaders of UHW-W participated in the creation of a new union, the National Union of Health Care Workers ('NUHW')."

The remaining 8 of the 47 paragraphs contained factual allegations attempting to link the named defendants to acts of assault, battery, intimidation, threat, and coercion allegedly carried out against plaintiffs by other SEIU members. These paragraphs

assaulted and intimidated Rosselli; (5) SEIU agents on at least 20 occasions surrounded, verbally attacked, and "got into 'the face[s]' " of individual plaintiffs and NUHW supporters at meetings and events; (6) SEIU agents threw eggs and water bottles at plaintiffs and other NUHW supporters at a Los Angeles event in November 2009; (7) SEIU agents have made multiple death threats to plaintiff Glasper, followed her to medical appointments, physically grabbed her NUHW badge, and threatened and attempted to strike her; and (8) SEIU agents yelled at, pushed, assaulted, and threatened defendants Borsos, Rosselli, and Cornejo, and NUHW supporter, Dolores Huerta, at numerous other workplace meetings with health care employees.

alleged, inter alia, (1) defendants had a policy and practice of utilizing physical intimidation against individuals and other unions they came to perceive as their " 'enemies' " in the labor movement; (2) defendants had carried out their policy of intimidation on specified occasions to break into and attack meetings held by enemy unions and individuals other than plaintiffs; (3) at a January 2009 meeting with SEIU agents in Las Vegas, individual defendant Henry instructed members on tactics of intimidation to be used against plaintiffs and their supporters and told the members, "You are SEIU's warriors!"; and (4) in a campaign leading up to a representation election in Fresno between SEIU and NUWH, defendant Regan instructed a large gathering of SEIU agents to intimidate NUWH supporters, to "give them an ass-whipping," to "drive a stake through [their] hearts," to "bury them . . . in the ground," and to threaten Hispanic workers that the immigration service would be called on them if they did not vote for SEIU.

## B. *Defendants' Special Motion to Strike*

Defendants filed a general denial, followed by a special motion to strike the FAC under the anti-SLAPP statute. Defendants asserted plaintiffs' claims were subject to a motion to strike because they arose from (1) conduct in furtherance of the exercise of the constitutionally protected right of petition or speech in connection with a public issue (§ 425.16, subd. (e)(4)); (2) statements made in connection with an issue under consideration by an official government body (§ 425.16, subd. (e)(2)); and (3) statements made in a place open to the public in connection with an issue of public interest (§ 425.16, subd. (e)(3)). Defendants further contended plaintiffs could not demonstrate a probability of prevailing on their claims because they could not provide clear proof defendants participated in or authorized the acts alleged in the FAC, and because the statements allegedly made by defendants to fellow SEIU members were protected speech during a labor dispute.

The trial court granted defendants' motion. It found NUHW and UHW-W were locked in a bitter labor dispute over the representation of 100,000 workers, NUHW had filed more than 60 petitions with the government agencies that conduct and oversee

4

representation elections, and the dispute had gained widespread attention in the media. The court held plaintiffs' claims arose "in whole or substantial part, from speech and petitioning activities during the course of the labor dispute between UHW-W and NUHW," specifically, from speech by one of the individual defendants to SEIU and UHW-W supporters, and "speech or other conduct by named or unnamed members, low-level employees, or supporters of SEIU and UHW-W, directed at [p]laintiffs . . . during and about the labor dispute or the election campaigns. . . ." The trial court subsequently awarded defendants attorney fees in the amount of $57,890.45, under section 425.16, subdivision (c)(1).

## C.  *Appeals and Cross-appeal*

Plaintiffs timely appealed from the order granting the special motion to strike (case No. A133299) and from the order awarding fees (case No. A133539).  Defendants cross-appealed from the order awarding fees (case No. A133896).  Pursuant to the parties' stipulation, we consolidated the appeals and cross-appeal for briefing, argument, and decision.

## II.  DISCUSSION

A threshold issue in this case is whether defendants met their burden of showing plaintiffs' causes of action against them arose from activities protected by the anti-SLAPP statute.  The statute provides:  "A cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue* shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1), italics added.)  The moving defendant's burden is to demonstrate the act or acts of which the plaintiff complains were taken in furtherance of the defendant's right of petition or free speech under the United States or California Constitutions in connection with a public issue, as defined in the statute.  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669 (*Peregrine Funding*).)  Unless the defendant meets that initial burden, there is no

5

need to determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Ibid.*) On appeal, "we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step." (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266–267.)

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) Thus, the first prong of analysis under the anti-SLAPP statute focuses on *the acts on which liability is based,* not on the "gestalt" or "gist" of the cause of action. (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1190–1191.) In conducting that analysis, we must distinguish between "(1) speech or petitioning activity that is *mere evidence related to liability* and (2) liability that is *based on* speech or petitioning activity." (*Graffiti Protective Coatings, Inc. v. City of Pico Rivera* (2010) 181 Cal.App.4th 1207, 1214–1215 (*Graffiti Protective Coatings*), italics added.) An anti-SLAPP motion should only be granted if liability is *based on* the defendant's speech or petitioning activity itself. (*Ibid.*)

The complaint in this case does allege statements by two of the defendants made at least arguably in a protected context. The complaint alleges in paragraph 38 that defendant Henry (1) attended "a national meeting of SEIU agents" in Las Vegas to prepare for SEIU's takeover of UHW-W at which agents were instructed on tactics of intimidation to be used against plaintiffs and their supporters; and (2) told the attendees, "You are SEIU's warriors."[3] In connection with a union representation election in Fresno, defendant Regan was alleged in paragraph 43 of the FAC to have exhorted a large gathering of SEIU members to intimidate NUWH supporters to dissuade them from

---

[3] Paragraph 38 does not allege defendant Henry was the person who instructed the SEIU members on intimidation tactics at this meeting.

campaigning and voting for NUHW. He told the members to "give them an ass-whipping," "drive a stake through [their] hearts," and "bury them . . . in the ground." He was further alleged to have told them to threaten Hispanic workers the immigration service would be called on them if they did not vote for the SEIU. Defendants characterize both of these occasions as "constitutionally-protected speech activities occurring in the context of the nationally-recognized public issue of the labor dispute between UHW and NUHW."

We will assume, without deciding, the subject paragraphs do indeed involve constitutionally protected speech in connection with a public issue. (See § 425.16, subds. (e)(2), (3), (4).)[4] The presence of these allegations in the FAC nonetheless still does not support the trial court's order in our view, because none of plaintiffs' causes of action were *based on* the acts or statements of defendants alleged in paragraphs 38 and 43.

We start with plaintiffs' Civil Code section 51.7 cause of action. The conduct giving rise to a cause of action under section 51.7 is violence, or the threat of violence, directed at the plaintiffs for specified reasons. (Civ. Code, § 51.7, subd. (a).) In this case, the FAC does not allege plaintiffs were present when Henry or Regan spoke to SEIU members at the meetings in question, nor does it allege Henry or Regan engaged in a violent act toward them, or threatened them with violence by making the statements alleged, all of which were addressed to an audience of SEIU's own supporters. The FAC does not in any way suggest Henry or Regan intended the statements for plaintiffs' ears.

---

[4] Section 425.16, subdivision (e) defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include, in relevant part, "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Defendants asserted all three of the subsections were applicable.

There is not even an allegation anyone who heard Henry's or Regan's speeches thereafter participated in any act or threat of violence alleged in the FAC, or that any act alleged in paragraphs 36–37, 41, and 45–66 of the FAC was performed as a result of statements quoted or referred to in paragraphs 38 and 43. In fact, there was no allegation Henry gave any instruction on tactics of intimidation at the Las Vegas meeting, or did anything there other than tell the agents they were "SEIU's warriors." This allegation clearly was not intended as a factual basis for an alleged violation of section 51.7 by Henry or any other defendant. While Regan was alleged to have instructed the SEIU members to intimidate supporters of NUHW, there is no allegation he told them specifically how to go about doing that during his speech in Fresno, or that any of the persons he spoke to on that occasion went out and performed any of the specific wrongful acts alleged in the FAC as a result of Regan's public statements at the meeting.

Considering the FAC as a whole, the causes of action it asserts, and the theory of liability it puts forward, the function of paragraphs 38 and 43 was not to set forth facts establishing the factual basis for Regan's and Henry's liability, much less for that of the other individual defendants. In fact, defendants concede as much by arguing none of the statements attributed to Henry and Regan could support plaintiffs' claims because "they could not be reasonably understood as threats of violence or harm, which is an essential element of each of Plaintiff's claims." Instead, paragraphs 38 and 43 serve a purely evidentiary function. With respect to Civil Code section 51.7, these allegations (1) support an *inference* the specific acts of violence, threat, and intimidation alleged by plaintiffs in paragraphs 36–37, 41, and 45–66 of the FAC were committed at the direction or with the encouragement or ratification of these defendants and SEIU's leadership; and (2) substantiate the allegation the harms done to them grew out of an SEIU policy and practice in which these defendants and SEIU's leadership were all complicit.[5] Because

---

[5] We express no opinion whether the facts alleged as to the individual defendants' conduct, if proven, and the inferences reasonably derived from them, would be sufficient to establish defendants' liability for the acts of SEIU's supporters and agents as alleged in the FAC.

8

Regan's and Henry's statements at these meetings were put forward by plaintiffs as mere items of evidence relating to defendants' liability under Civil Code section 51.7, not as the *basis* for their liability, their presence in the FAC does not support the order granting the motion to strike. (*Graffiti Protective Coatings*, *supra*, 181 Cal.App.4th at pp. 1214–1215.)

The causes of action under Civil Code section 52.1 and for assault also did not arise from the statements alleged in paragraphs 38 and 43, which we have assumed are protected exercises of free speech. Civil Code section 52.1 requires interference with the exercise of legally protected individual rights by means of "threats, intimidation, or coercion." (Civ. Code, § 52.1, subd. (a).) As the basis for their assault cause of action, plaintiffs alleged SEIU members frequently got " 'in their faces' " while threatening to harm them, often accompanied by offensive physical touching, as more specifically described in paragraphs 41 and 45–66 of the FAC. Plaintiffs did not allege the statements of Henry and Regan at the two meetings constituted threats, intimidation, coercion, or assault personally directed at them, or the alleged wrongful acts committed by SEIU members or agents were carried out as a direct result of those specific statements. While the FAC does allege in general terms that the wrongful actions of SEIU employees were done "[a]t the direction and upon the orders" of defendants Regan, Henry, and Stern in their official capacities, or pursuant to a policy and practice they formulated and implemented, paragraphs 38 and 43 in particular do no more than allege facts which, if true, would *inferentially* support this claimed nexus between the defendants and the conduct alleged as the basis for plaintiffs' causes of action. As such, these paragraphs do not support the nexus defendants sought to establish—that plaintiffs' causes of action *arose from* protected speech.

As defendants acknowledge, the "vast majority" of the allegations in the FAC allege conduct by third parties, not defendants. Defendants maintain all or most of these allegations were also "constitutionally-protected speech activities" taking place in connection with a public issue—the labor dispute between SEIU and NUHW. We disagree. Conduct illegal as a matter of law is not protected by the anti-SLAPP statute.

9

(*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*); *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284, 1296–1297 (*Novartis*).) Thus, the statute did not apply to breaking windows, leaving excrement on doorsteps, and vandalizing cars in a protest against animal research, or to physically accosting and shouting epithets at prospective patrons and damaging their cars in a protest against a business's display of the Vietnamese flag. (*Novartis*, at pp. 1296–1297; *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 851 (*Lam*).)[6] Threats of violence or bodily injury are not protected activities for purposes of an anti-SLAPP motion. (*D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1210–1220 (*D.C.*).)

We note defendants did not contest the allegations pertaining to the conduct of nondefendant SEIU members in the proceedings below, all of which were supported by declarations submitted in opposition to the motion to strike. We therefore treat the allegations as uncontraverted for purposes of deciding whether the conduct alleged was protected.[7] (See *Flatley, supra,* 39 Cal.4th at pp. 320, 328–329.) In our view, most of the third party conduct alleged was not protected. The allegations against nondefendant SEIU members included multiple and repeated acts of assault and battery, threats of violence and death, property damage, and physically accosting and surrounding NUHW supporters in a threatening manner. The gravamen of all three of plaintiffs' causes of action is illegal conduct—violence, assault, threats of physical harm, intimidation, and coercion—that is constitutionally unprotected. We see no distinction between the acts alleged as a basis for this action and the type conduct found unprotected in *Novartis*, *Lam*, and *D.C.* The conduct goes well beyond mere speech in connection with a labor dispute. To the extent the FAC also alleges arguably protected speech or other protected

---

[6] *Lam*'s finding that physically accosting and intimidating patrons of the targeted business were "clearly unprotected acts" (*Lam, supra,* 91 Cal.App.4th 832 at p. 851), was cited with approval by the California Supreme Court in *Flatley*, *supra*, 39 Cal.4th at page 313.

[7] We note defendants answered the FAC by general denial. We therefore take the facts alleged in the FAC as true *solely* for purposes of determining whether plaintiffs' causes of action arose from protected activity.

10

activities by third parties, such activities are merely incidental to the unprotected, illegal acts upon which plaintiffs' causes of action are necessarily based. (*Peregrine Funding, supra*, 133 Cal.App.4th at p. 672.) Such incidental activities cannot support an order to strike the FAC. (*Ibid.*)

We hold the trial court erred in determining plaintiffs' causes of action arose from defendants' exercise of their speech or petition rights under the United States or California Constitutions, and therefore erred in granting the motion to strike the complaint. (§ 425.16, subd. (b)(1).) We do not reach the remaining issues in case No. A133299.[8] The order awarding prevailing party attorney fees and costs to defendants under section 425.16, subdivision (c)(1) must also be reversed, which moots defendants' cross-appeal from the award and compels its dismissal.

## III. DISPOSITION

The August 17, 2011 order granting defendants' special motion to strike the first amended complaint, and the October 3, 2011 order granting in part defendants' motion for attorney fees and costs, are reversed. Case No. A133896 is dismissed as moot. The matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Plaintiffs are awarded their costs on all three appeals.

---

[8] We take no position regarding the likely outcome of any future dispositive motion by the defendants. Plaintiffs will have the burden under Labor Code section 1138 of producing "*clear proof* of [defendants'] actual participation in, or actual authorization" of any unlawful acts of the SEIU's members or agents. (Italics added.) Cases decided under the federal Norris-LaGuardia Act (29 U.S.C. § 101 et seq.) such as *Fry v. Airline Pilots Ass'n, Intern.* (10th Cir. 1996) 88 F.3d 831 and *Yellow Bus Lines, Inc. v. Local Union 639* (1989) 883 F.2d 132 provide guidance in interpreting Labor Code section 1138, but unlike those cases, we are not required at this stage to determine whether either party is entitled to a judgment on the merits.

_____
Margulies, Acting P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.