Filed 3/24/15  ReadyLink v. Integrated Healthcare Holdings CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| READYLINK, INC., | |
| Plaintiff and Respondent, | G049621 |
| v. | (Super. Ct. No. 30-2013-00669286) |
| INTEGRATED HEALTHCARE HOLDINGS, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Vaughn & Vaughn, Donald A. Vaughn and Jeffrey S. Herman for Defendants and Appellants.

Klein & Wilson and Gerald A. Klein for Plaintiff and Respondent.

\*          \*          \*

ReadyLink, Inc. (ReadyLink) filed a complaint against Western Medical Center Santa Ana and three other hospitals (collectively, Hospitals), as well as the Hospitals' parent corporation, Integrated Healthcare Holdings, Inc. (IHHI) (collectively, Hospital Defendants).[1] ReadyLink asserted causes of action for fraud and breach of contract in connection with certain supplemental staffing agreements whereby ReadyLink provided temporary nursing personnel to the Hospitals. The Hospital Defendants filed an anti-SLAPP motion with respect to the fraud causes of action, asserting that those causes of action pertained to their protected activity in connection with two prior lawsuits.

We affirm the denial of the anti-SLAPP motion. The fraud causes of action were based on the allegation that the Hospitals negotiated and entered into the supplemental staffing agreements knowing they never intended to pay ReadyLink for the services they used. This was not protected activity under Code of Civil Procedure section 425.16, subdivision (b)(1).

I

FACTS

In June and July 2010, ReadyLink executed supplemental staffing agreements with the Hospitals. The agreements were two years in duration.

Pursuant to one of those agreements, ReadyLink provided temporary nurse Suvarna Durgiah, R.N. to Western Medical Center Santa Ana. Thereafter, in September 2011, Daniel Stearns filed a medical malpractice action against Western Medical Center Santa Ana and two doctors (Stearns Malpractice Lawsuit).

---

[1] The Hospital Defendants are IHHI, WMC-SA, Inc., doing business as Western Medical Center Santa Ana, WMC-A, Inc., doing business as Western Medical Center Anaheim, Coastal Communities Hospital, Inc., doing business as Coastal Communities Hospital, and Chapman Medical Center, Inc., doing business as Chapman Medical Center.

On the expiration of the 2010 supplemental staffing agreements, new supplemental staffing agreements were executed between ReadyLink and the Hospitals. Three of the supplemental staffing agreements, including the one for Western Medical Center Santa Ana, were entered into on June 1, 2012. The fourth supplemental staffing agreement was entered into shortly thereafter.

On June 8, 2012, Western Medical Center Santa Ana tendered the defense of the Stearns Malpractice Lawsuit to ReadyLink, asserting that Durgiah was to blame for Stearns's injuries because she failed to communicate his postsurgical complaints to the doctors. ReadyLink rejected the tender on August 3, 2012.

Western Medical Center Santa Ana settled the Stearns Malpractice Lawsuit and, in March 2013, demanded that ReadyLink reimburse it for the costs of settlement and defense, totaling more than $500,000. In August 2013, Western Medical Center Santa Ana, not having received reimbursement, filed suit against ReadyLink for breach of contract and indemnity (Western Medical Center Lawsuit).

Later that month, ReadyLink filed suit against the Hospital Defendants, seeking, inter alia, damages for fraud and breach of contract. It alleged that the Hospital Defendants had failed to pay over $244,000 in invoices on the 2012 supplemental staffing agreements. As the basis for the fraud causes of action, ReadyLink further alleged that the Hospitals, at the time they executed the 2012 supplemental staffing agreements, had no intention of paying for the services received thereunder. ReadyLink explained that, when they signed the agreements, the Hospitals already had decided to offset the monies Western Medical Center Santa Ana paid to settle the Stearns Malpractice Lawsuit against the cost of future services to be provided under the supplemental staffing agreements.

The Hospital Defendants filed a Code of Civil Procedure section 425.16 anti-SLAPP motion with respect to ReadyLink's fraud causes of action, asserting that those causes of action were based on protected activity in connection with the Stearns

3

Malpractice Lawsuit and/or the Western Medical Center Lawsuit. In its opposition, ReadyLink maintained that its fraud causes of action were based on the Hospitals' "secret intent not to pay their bills when they signed the contracts in 2012."

The trial court agreed that the Hospital Defendants had failed to show ReadyLink's fraud causes of action arose out of activity protected by the anti-SLAPP statute, and denied their motion. It explained that the gravamen of the fraud causes of action was that the Hospitals "fraudulently executed the 2012 supplemental staffing agreements without the intent to perform in order to later offset what they believed they [were] owed by . . . ReadyLink as indemnity for the [Stearns Malpractice] Lawsuit." The Hospital Defendants appeal.

## II

## DISCUSSION

A. *Code of Civil Procedure Section 425.16:*

*(1) Introduction—*

Code of Civil Procedure section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." A motion under this provision is commonly known as an "anti-SLAPP" motion. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732-733.) We review the ruling on an anti-SLAPP motion de novo. (*G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 611.)

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The

4

moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 733.)

"'A defendant can meet his or her burden [of showing that the challenged cause of action arises from protected activity] by demonstrating the acts underlying the plaintiff's cause of action fit within one of the categories of section 425.16, subdivision (e). [Citation.] Section 425.16, subdivision (e) defines an act in furtherance of the defendant's right of petition or free speech in connection with a public issue to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."' [Citation.]" (*Turner v. Vista Pointe Ridge Homeowners Assn.* (2009) 180 Cal.App.4th 676, 682.) "To determine whether defendant has met [his] burden we must look at the 'gravamen of the lawsuit.' [Citation.]" (*Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 715.)

*(2) Anti-SLAPP Motion—*

In their anti-SLAPP motion, the Hospital Defendants sought to strike ReadyLink's first cause of action, for fraud based on promise made without intention to perform, and second cause of action, for fraud based on concealment. As we have noted, the Hospital Defendants asserted that those causes of action were based on their protected

5

activity in connection with the Stearns Malpractice Lawsuit and/or the Western Medical Center Lawsuit.

In support of this assertion, they cited ReadyLink's background allegations to the effect that: (1) before June 1, 2012, IHHI and Western Medical Center Santa Ana decided that they would seek indemnity from ReadyLink in connection with the Stearns Malpractice Lawsuit; (2) IHHI and Western Medical Center Santa Ana decided to conceal this intention from ReadyLink until after the 2012 Western Medical Center Santa Ana supplemental staffing agreement was executed; (3) IHHI and Western Medical Center Santa Ana tendered the defense of the Stearns Malpractice Lawsuit to ReadyLink one week after the 2012 supplemental staffing agreements for Western Medical Center Santa Ana and two of the other Hospitals were executed; (4) in August 2012, ReadyLink rejected the tender of defense of the Stearns Malpractice Lawsuit and the following month IHHI stopped paying ReadyLink's invoices to the Hospitals; and (5) in March 2013, IHHI and Western Medical Center Santa Ana notified ReadyLink that the Stearns Malpractice Lawsuit was settled, they were seeking $502,063.08 in indemnity from ReadyLink, the Hospital Defendants were not going pay ReadyLink's invoices, and they were going to offset the amounts of those invoices against the $502,063.08.

*(3)  Analysis—*

It is true that ReadyLink, in its complaint, recited background information concerning Western Medical Center Santa Ana's request for indemnity with respect to the Stearns Malpractice Lawsuit. However, the gravamen of the two fraud causes of action was clearly that the Hospitals, at the time they entered into the 2012 supplemental staffing agreements, had no intention of paying for the services received thereunder, and that they concealed this fact from ReadyLink. The reason they had no intention of paying was that they intended to offset the monies paid to settle the Stearns Malpractice Lawsuit against the monies owing for the services ReadyLink provided.

6

The Hospital Defendants endeavor to recharacterize ReadyLink's fraud causes of action as being based on their own alleged decisions to seek indemnity with respect to the Stearns Malpractice Lawsuit when it was pending, to file an action against ReadyLink for indemnification, and to "raise the affirmative defense of 'offset' if ReadyLink sued for Breach of Contract . . . ." They continue on to state the "alleged communications among [the Hospital Defendants] where they purportedly 'conspired' to pursue this utterly — justified legal strategy are all either protected petitioning or communicative conduct, which arise from pleadings, statements and writings 'in connection with' civil litigation."

This is not a fair characterization of ReadyLink's fraud causes of action. The fraud causes of action were not based on the fact that Western Medical Center Santa Ana requested indemnity with respect to the Stearns Malpractice Lawsuit, filed the Western Medical Center Lawsuit, or intended to assert the right of offset as a defense if ReadyLink filed suit for breach of contract. The last of those assertions does not even make sense. ReadyLink could not (and did not) base its fraud causes of action on the anticipation that if it filed suit for breach of contract the Hospital Defendants would raise a particular defense.

In any event, the background facts pertaining to the Stearns Malpractice Lawsuit and the Western Medical Center Lawsuit were merely incidental to the facts upon which the fraud causes of action were based. The fraud causes of action were based on the allegation that the Hospitals deliberately entered into supplemental staffing agreements in 2012 knowing and intending that they would use services for which they would not pay, and that they concealed this intention from ReadyLink in negotiating and entering into the agreements.

"'Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed [citation] and that a plaintiff cannot avoid operation of the anti-SLAPP

7

statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. [Citation.] Accordingly, we disregard the labeling of the claim [citation] and instead "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies" and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] We assess the principal thrust by identifying "[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim." [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]' [Citation.]" (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 267.)

"As our Supreme Court has stressed, 'the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]' [Citation.] 'In other words, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]"' [Citation.]" (*Tuszynska v. Cunningham*, *supra*, 199 Cal.App.4th at p. 267.)

Here, the Hospitals' negotiation and execution of the 2012 supplemental staffing agreements were not acts taken in furtherance of the rights of petition or free speech. Moreover, as ReadyLink duly points out, Western Medical Center Santa Ana was the only one of the Hospital Defendants involved in either the Stearns Malpractice Lawsuit or the Western Medical Center Lawsuit. The Hospital Defendants have not explained how the rights of petition or free speech of any of them other than Western Medical Center Santa Ana could possibly be involved in the matter before us. We

8

conclude the acts underlying the fraud causes of action did not constitute protected activity under Code of Civil Procedure section 425.16, subdivision (b)(1).

### III

### DISPOSITION

The order is affirmed.  Respondent ReadyLink shall recover its costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.