Filed 7/17/13  Living Green Growers v. Valley Center CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LIVING GREEN GROWERS, LLC, Cross-complainant and Respondent, v. VALLEY CENTER II, LP et al., Cross-defendants and Appellants. | D062450 (Super. Ct. No. 37-2011-00057671-CU-CO-NC) |

APPEAL from an order of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Affirmed.

Hill, Farrer & Burrill, Neil D. Martin and Grant K. Peto for Cross-defendants and Appellants.

Law Offices of Joshua G. Blum, Joshua G. Blum and Matthew C. Heerde for Cross-complainant and Respondent.

Valley Center II, LP (VCII) filed a complaint against several defendants, including Living Green Growers, LLC (Growers), seeking a declaration that VCII owned certain nursery plants and related materials on VCII's property.  Shortly after, Growers filed a

cross-complaint, alleging claims against VCII, its principal Randall Smith, and two of Smith's business associates, David Judaken and Gonzalo Nieto (collectively cross-defendants).[1]

Cross-defendants moved to dismiss Growers' cross-complaint under the anti-SLAPP statute. (Code Civ. Proc., § 425.16 (§ 425.16).) The court denied the motion, finding Growers' claims arose out of a commercial dispute regarding plants and were not based on activities protected by the anti-SLAPP statute.

On appeal, cross-defendants contend the court erred in denying their anti-SLAPP motion on two causes of action alleged in Growers' cross-complaint: the seventh and ninth causes of action. We reject these contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Background Summary*

VCII owns property in Valley Center used to grow commercial nursery plants. Randall Smith is VCII's principal. For ease of reference and where appropriate, we shall refer collectively to Smith and VCII as "Smith."

In late 2010 or early 2011, Smith had discussions with David Itzikman and Michael Gill about a proposed business transaction. The parties discussed that Itzikman and Gill would form a plant wholesaler business and use Smith's property to grow plants, and in exchange they would assist Smith with some of his financial obligations. Shortly

---

[1]     Jo Fusion, Inc. was also a cross-complainant and brought claims against VCII and various parties. However, those claims are not a subject of this appeal. We thus do not discuss these claims, except as they are relevant to the issues before us.

2

after, Itzikman and Gill formed a limited liability company (Growers) and then placed plants and related supplies on Smith's property. For the next several months, Growers maintained those plants on Smith's property.

On about July 15, 2011, Smith retained a financial consultant, cross-defendant Nieto. Two weeks later, in late July, Smith, Nieto, and another business associate (cross-defendant Judaken[2]) refused to permit Growers to have access to Smith's property and claimed ownership interests in the plants.

The next month, on August 30, 2011, Smith's entity (VCII) filed a complaint against Growers, Itzikman, and Gill, seeking a declaratory judgment as to the parties' respective interest in Smith's property and the disputed plants.

*Growers' Cross-Complaint*

Three months later, on December 1, 2011, Growers filed a cross-complaint against Smith, VCII, Judaken, and Nieto. Growers' cross-complaint contained the following factual allegations.

In 2010, Smith was having substantial personal and financial difficulties, and had abandoned and/or mismanaged his business ventures. One of those ventures was the operation of a retail nursery on Smith's rural property.

In about February 2011, Itzikman and Gill approached Smith with an offer to enter into an agreement whereby Itzikman and Gill would assume Smith's payments on a secured loan in exchange for Smith allowing Itzikman to use a portion of the property for

---

[2]     The record does not specify Judaken's precise relationship with Smith, but it appears Judaken later acquired an interest in Smith's property through a receivership.

his own business (Growers). While the parties were discussing the details of this proposal and as consideration for services and other assistance, Smith agreed that Growers could use Smith's property to store plants, soil, and supplies, and that Growers would be granted unfettered access to the property to inspect, grow, maintain, and remove the plants as necessary to fulfill its customer orders.

By May 2011, Smith was still in personal and financial distress, but had not yet signed these proposals. In a meeting attended by Itzikman, Gill and Smith, Smith allegedly reiterated his earlier representations that he had no interest in Growers' plants stored on Smith's property, those plants could remain on the property, and Growers had permission to enter the property to maintain and remove the plants. Based on these representations, Growers continued to expend efforts and money to maintain its plants.

However, in late July 2011, "Cross-Defendants [Smith, Nieto, and Judaken] threatened [Growers], and its laborers, and prevented them from accessing [Smith's property], wrongfully converted [Growers'] plants, soil, and supplies, falsely claimed ownership interest in its plants, and intentionally neglected and failed and refused to monitor and maintain the plants belonging to [Growers] . . . , causing such plants to deteriorate, and causing [Growers] to breach its contracts with customers and damaging its business and reputation."

Based on these allegations, Growers' cross-complaint asserted 12 causes of action.

The first three causes of action and the eighth cause of action concern primarily Jo Fusion, Inc.'s claims, and are not relevant here. The fourth cause of action is Growers' breach of contract claim against VCII. The fifth and sixth causes of action are fraud-

4

based claims against VCII and Smith, alleging that these parties intentionally misrepresented and/or made false promises that Growers could place its plants, soil, and supplies on the property, and Growers relied on those representations to its detriment.

Growers asserted the seventh, ninth, tenth, and eleventh causes of action against all four cross-defendants: VCII, Smith, Judaken, and Nieto. The seventh cause of action alleged conversion or trespass to chattels. The ninth cause of action alleged intentional interference with contractual relations. The tenth and eleventh causes of action alleged intentional and negligent interference with prospective economic relations. Although labeled differently and each may require different levels of proof on various elements, the essence of each of these claims was the allegation that cross-defendants improperly claimed ownership interests in Growers' plants and wrongfully prevented Growers and its workers from accessing and maintaining its plants on Smith's property, thereby causing the plants to lose value and resulting in Growers' inability to fulfill its own contracts with its customers.

Specifically, each of these four causes of action incorporated the allegation that:

> "[I]n late July 2011, Cross-Defendants, and each of them, threatened [Growers], and its laborers, and prevented them from accessing [Smith's] property, wrongfully converted its plants, soil and supplies, falsely claimed ownership interest in its plants, and intentionally neglected and failed and refused to monitor and maintain the plants belonging to [Growers], despite demand and their false assurances that they were doing so, causing such plants to deteriorate, and causing [Growers] to breach its contracts with customers and damaging its business and reputation."

Additionally, the seventh and ninth causes of action contain the following similar paragraph:

5

"Beginning in August 2011, Cross-Defendants, and each of them, knowingly and intentionally threatened GROWERS, and its laborers, and prevented them from accessing the plants, wrongfully took possession of the property and converted it for their own use, falsely claimed ownership interest in the plants, and intentionally neglected and failed and refused to monitor and maintain the plants belonging to GROWERS, despite demand and their false assurances that they were doing so. . . ."[3]

The tenth and eleventh causes of action contain an almost identical paragraph, but omit the phrase "Beginning in August 2011."  Other than these allegations, Growers did not identify any additional wrongful conduct or activities by cross-defendants that formed the basis of the trespass/conversion or interference claims alleged in the seventh, ninth, tenth, and eleventh causes of action.

The twelfth cause of action sought declaratory relief, seeking an order that Smith/VCII have no ownership interest in Growers' plant inventory.

*Cross-Defendants' Anti-SLAPP Motion*

Shortly after Growers filed this cross-complaint, cross-defendants moved to dismiss the pleading under the anti-SLAPP statute.  (§ 425.16.)  They argued that the cross-complaint was subject to the anti-SLAPP statute because the "only things that Cross-Defendants have done to claim an ownership interest in the plants" were to (1) file the underlying complaint for declaratory relief and (2) respond after Growers called the sheriff's department.  They further argued Growers would be unable to establish a probability of prevailing on its claims for various reasons, including that cross-

_____

[3]     In the ninth cause of action, this paragraph begins "Notwithstanding the above" and then states "beginning in August 2011."  However, this distinction is not material for our purposes.

6

defendants' actions—filing a lawsuit and communicating with the sheriff—constituted privileged litigation activity.

In support of this motion, each of the cross-defendants submitted a declaration.

In his declaration, Smith denied that he agreed to permit Growers or Itzikman to grow plants on his property, and also denied that he contacted Growers, Itzikman or Gill to claim an ownership interest in the plants. He said he retained an attorney "[o]n or about August 8, 2011 . . . ."

In his declaration, Nieto said his only actions with respect to claiming an interest in the disputed plants were: (1) retaining an attorney for Smith on August 8, 2011; (2) writing a letter to the sheriff's department on August 30, 2011 informing the sheriff that Growers had no legal right to enter Smith's property; and (3) twice speaking on the telephone with Itzikman on August 30, 2011, in which he told Itzikman to have his counsel contact Smith's counsel.

In his declaration, Judaken similarly claimed that his only actions pertaining to the disputed plants occurred in August 2011 during communications with the sheriff's department and his attorney. Specifically, he said that: "On or about August 30, 2011, I learned that Itzikman and [Gill] were attempting to get through the locked gates on [Smith's] [p]roperty. . . . I spoke with the sheriff's department and told them that Itzikman and Gill did not have a lease for the [property] and that they were trespassing." [¶] . . . [¶] . . . The only actions that I have taken to claim an ownership interest in the plants on behalf of [Smith] . . . have been to contact my attorneys regarding this litigation and the sheriff's department regarding Itzikman and Gill's trespassing on the [property]."

7

Cross-defendants' attorney also submitted a declaration, stating that he sent a letter to Growers' counsel and telephoned the sheriff's department in an attempt to prevent Itzikman and Gill from removing plants from Smith's property until the matter had been resolved in court.

In opposition to the anti-SLAPP motion, Growers did not dispute that several of the activities discussed in cross-defendants' declarations—a letter from cross-defendants' counsel, cross-defendants' communications with the sheriff in late August 2011, and cross-defendants' filing of the complaint—were protected SLAPP activities. But Growers argued its claims against cross-defendants were not *based* on these activities, and instead the claims arose from cross-defendants' unprotected actions beginning in late July 2011.

In support, Growers relied on the allegations of the cross-complaint (which did not mention the protected activities) and Itzikman's declaration. Itzikman's declaration stated in part:

> "[O]n July 27, 2011, without notice, Smith and others on his behalf ejected [Growers'] own workers from [Smith's property], where they had been caring for [Growers'] plants for the previous four months. Moreover, Smith and others on his behalf informed the workers to advise [Growers] that the plants were 'no longer' the property of [Growers] and now were the property of Smith.
>
> . . . The following day, on July 28, 2011, I traveled to the [property] to access and secure the maintenance of [Growers'] plants. When I arrived, I was suddenly informed by Cross-Defendants David Judaken and Gonzalo Nieto, that Smith was refusing [Growers] . . . any access to its plants for purposes of caring for them or removing them to fulfill its contractual obligations. They further informed me that Smith was now claiming an ownership interest in [Growers'] plants and would not allow [Growers] any access to them moving

8

forward. In addition, Judaken and Nieto informed me that they were also claiming an ownership interest in [Growers'] plants through their newly formed business relationship with Smith . . . .

. . . *Since that date*, Cross-Defendants, through their exclusive possession and control of [Growers'] plants have intentionally and/or negligently caused them to deteriorate and rendered the property valueless in many instances. This resulted in instances where [Growers'] customers have returned the plants based on their poor condition, causing [Growers] significant damages . . . .

. . . [The actions alleged in the cross-complaint] all took place well before the filing of the complaint in this matter. [¶] . . . [¶] . . . The allegations in the Cross-Complaint regarding false claim of ownership concern actions taken by Smith that preceded the filing of the complaint. Additionally, the allegation of claimed ownership was one of several alleged acts of misconduct by Smith involving refusing [Growers] and its laborers access to the premises where its plants were located, access to the plants, allowing the plants to deteriorate, causing [Growers] to breach its contracts with others and a host of other activities." (Italics added.)

In reply, cross-defendants reiterated that the claims were governed by the anti-SLAPP statute because "the only things they ever did to claim an interest in the plants were protected activities (sending a letter to counsel before the lawsuit was filed, responding to the sheriff department after Cross-Complainant called them, and filing the underlying complaint)."

After a hearing, the court denied the anti-SLAPP motion, finding cross-defendants did not meet their burden to show the claims alleged protected activity. The court stated: "[T]he cross-complaint did not arise out of Cross-defendants' action in filing the complaint and communicating with the sheriff's department. [¶] Specifically, . . . [Growers'] claims . . . arose out of a verbal agreement made in February 2011 and the cross-complaint is replete with allegations of pre-complaint conduct by Cross-

9

defendants."  The court also found cross-defendants' anti-SLAPP motion was frivolous and Growers was entitled to attorney fees.  (§ 425.16, subd. (c)(1).)

DISCUSSION

I.  *Generally Applicable Legal Principles*

A special motion to strike under section 425.16 allows a defendant to obtain early dismissal of a lawsuit that qualifies as a SLAPP.  (§ 425.16, subd. (b)(1).)  A court engages in a two-step analysis in determining whether a dismissal is required.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  First, the court must determine if the lawsuit falls within the scope of the anti-SLAPP statute.  A cause of action is governed by this statute if it arose from activities that were in furtherance of the moving party's free speech or petition rights.  (*Ibid*., § 425.16, subd. (b)(1).)  The moving party bears the burden of demonstrating that a cause of action arose from such protected activity.  (§ 425.16, subd. (b)(1).)  If the moving party meets this burden, the court then engages in the second step of the analysis.  In this step, the burden shifts to the opposing party to demonstrate "a probability of prevailing on the claim."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)

In making these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (§ 425.16, subd. (b)(2).)  But the court "does not weigh credibility or compare the weight of the evidence.  Rather, the court's responsibility is to accept as true the evidence favorable to the [party opposing the motion] . . . ."  (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)  We review de novo the trial court's

10

rulings on an anti-SLAPP motion. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.)

## II. *Analysis*

In the proceedings below, cross-defendants sought to dismiss all 12 causes of action in the cross-complaint. On appeal, they challenge the court's denial of their anti-SLAPP motion only as to two causes of action: (1) the seventh cause of action for conversion or trespass to chattels; and (2) the ninth cause of action for intentional interference with contractual relations between Growers and its customers. They argue that unlike the other causes of action, these claims arose from protected activity because each includes a paragraph containing the phrase *beginning in August 2011*. Cross-defendants contend that their declarations show that the only activities in which they engaged *after August 1, 2011* were constitutionally protected activities (communicating with the sheriff, directing their counsel to write a letter to Growers, and filing their complaint), and therefore the seventh and ninth causes of action are necessarily subject to the anti-SLAPP statute.

Growers does not dispute that cross-defendants' communications with the sheriff's department, their counsel's letters, and the filing of the complaint are protected activities under the anti-SLAPP statute. (See *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) However, Growers maintains that its seventh and ninth causes of action were not *based* on these activities and thus its claims do not *arise* from protected actions. In support, Growers notes: (1) the pleadings do not mention or refer to the constitutionally protected activities; (2) the seventh and ninth causes of action expressly incorporate the earlier

11

allegations that cross-defendants engaged in wrongful conduct in July 2011; and (3) Itzikman's declaration supports that each of the defendants (Smith, Judaken, and Nieto) engaged in wrongful activities beginning in July 28, when they prevented Growers' workers from entering Smith's property to access Growers' plants, and then continued to engage in these unprotected activities (e.g., preventing access to the property, failing to maintain the plants) during August 2011 and beyond.

We agree with Growers' position.

In determining whether a claim *arises* from protected activity, a court must " 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' . . . . We assess the principal thrust by identifying '[*t*]*he allegedly wrongful and injury-producing conduct* . . . that provides the foundation for the claim.' [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271-1272, second italics added; see *Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 269-270.) "The anti-SLAPP statute's definitional focus is [on] the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra*, 29 Cal.4th at p. 92.)

The fact that a cross-complaint was filed after the cross-defendants engaged in protected activity or that the cross-complaint was triggered by the protected activity does not mean the claim "aris[es]" from that activity. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 77.) Instead, the moving party must show the defendants' activities *alleged to be wrongful* and upon which the claim is based constitutes protected activity. (*Ibid.*)

12

Although we are required to broadly construe the anti-SLAPP statute (§ 425.16, subd. (a)), we must examine the pleadings and related evidentiary record in a fair and commonsense manner to determine whether the claims are based on protected activities.

Fairly read, the seventh and ninth causes of action do not purport to base their claims on cross-defendants' petitioning activities. In these causes of action, Growers did not mention or refer to the petitioning activities. Each cause of action incorporates the factual allegation that in late July 2011, cross-defendants engaged in improper (and unprotected) actions by threatening Growers and preventing access to the property, and claiming an ownership interest in the plants. Itzikman's declaration supports that these unprotected activities constituted the factual foundation for the seventh and ninth causes of action. Although cross-defendants focus on the petitioning activities in their declarations, it is the party filing the complaint or cross-complaint, and not the opposing party, who decides the acts for which it is seeking to hold the party liable.

Cross-defendants contend the seventh and ninth causes of action must have been based on their constitutionally-protected petitioning activities because Growers included the phrase "beginning in August 2011" when identifying the alleged wrongful conduct. They say that Growers did not produce any evidence that they engaged in unprotected activities after the July 29 incident.

This argument is unsupported by the record. Growers submitted evidence showing that in late July 2011, Smith ejected Growers' workers from the property, and Nieto and Judaken refused to allow Growers access to the disputed plants and claimed their own ownership interests in the plants through their newly formed business

13

relationships with Smith. It is undisputed that *these* activities were not protected by the anti-SLAPP statute. Further, Itzikman stated in his declaration that these activities *continued* after July 2011, presumably through the time the cross-complaint was filed (December 2011). The fact that cross-defendants may not have had unprotected *communications* with Growers after July 2011, does not mean they were not continuing to engage in the alleged unprotected wrongful activities into August and beyond, including by failing to maintain Growers' plants and continuing to prevent access to the property.

Additionally, we are not convinced that Growers' use of the phrase *beginning in August 2011* in the seventh and ninth causes of action reflected an intent to hold cross-defendants liable only for activities that occurred beginning in August 2011 (and not before that time). When read in isolation, the phrase "beginning in August 2011" does suggest that cross-defendants' alleged wrongful conduct commenced for the first time in August. However, this conclusion is not reasonable when viewing the phrase in context of the entire complaint, together with the supporting declarations. Read as a whole, the complaint reflects that in each cause of action Growers is seeking to hold cross-defendants liable for their conduct and actions occurring before and after August 2011. This conclusion is supported by the fact that the factually and legally similar claims alleged in the tenth and eleventh causes of action (negligent and intentional interference with prospective economic advantage) do not specifically include the "beginning in August 2011" phrase. It is not reasonable to conclude that Growers intended to base its conversion and contract-interference claims (alleged in the seventh and ninth cause of

14

action) only on conduct beginning in August 2011, and to base its interference-with-prospective-economic-advantage claims (alleged in the tenth and eleventh causes of action) on conduct occurring before or after August 2011.

In this regard, we find unavailing cross-defendants' reliance on the *ejusdem generis* concept. " 'Under the principle of *ejusdem generis* (literally, "of the same kind") [citations], where specific words follow general words in a contract [or a statute], "the general words are construed to embrace only things similar in nature to those enumerated by the specific words.". . .' " (*Pfeifer v. Countrywide Home Loans, Inc.* (2012) 211 Cal.App.4th 1250, 1275.) This statutory and contract interpretation principle has no applicability here. The interpretation of a pleading for purposes of the threshold section 425.16 analysis does not resemble the interpretation of a contract or a statute. Unlike statutory or contract interpretation, in determining whether the defendant met its burden to show the claims arose from protected activity, we are not required to focus on the individual words, and instead must consider all of the allegations, including those incorporated in a particular cause of action, together with the evidence submitted by the parties. Under anti-SLAPP analysis, a court does not ignore general allegations merely based on a single allegation of more specific conduct. In any event, as noted, the allegation of conduct occurring in August 2011 incorporated essentially the same unprotected activities that were alleged to be wrongful in late July 2011. Thus, our interpretation is consistent with the *ejusdem generis* principle.

Cross-defendants' reliance on principles concerning "mixed" causes of action in the SLAPP context is also unhelpful here. Generally, if "a cause of action is based on

15

both protected activity and unprotected activity, it is subject to section 425.16 ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' " (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551.) However, in this case we have concluded the cause of action arises from unprotected activity and not on protected activity. Thus, the standards applicable to mixed causes of action are inapplicable. Moreover, to the extent the complaint can be viewed as including allegations of protected conduct (e.g., the communications between counsel, cross-defendants' communications with the sheriff, and cross-defendants' filing of the complaint) this conduct was incidental to Growers' claims. Reading the complaint as a whole, Growers was seeking relief arising from a commercial business dispute based on allegations that cross-defendants refused to allow access to Growers' plants and then failed to maintain the plants resulting in their destruction. In the context of this dispute, any references to unprotected conduct were incidental as a matter of law.

### III.  *Attorney Fees*

Growers requests this court award attorney fees on appeal under section 425.16, subdivision (c), which provides:  "If the court finds that [an anti-SLAPP] motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff [or cross-complainant] prevailing on the motion . . . ."  On the record before  us, we decline to find that cross-defendants' appeal was frivolous or solely intended to cause delay. We therefore deny Growers' attorney fees request.

16

DISPOSITION

Order affirmed.  Appellants to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.

17