[No. E050858. Fourth Dist., Div. Two. Sept. 16, 2011.]

DANUTA TUSZYNSKA, Plaintiff and Respondent, v.
JAMES CUNNINGHAM et al., Defendants and Appellants.

COUNSEL

Stone Busailah, Michael P. Stone, Muna Busailah; Hayes & Cunningham, Dennis J. Hayes and Amanda K. Hansen for Defendants and Appellants.

Terese M. Oliver for Plaintiff and Respondent.

OPINION

KING, J.—

## I. INTRODUCTION

Plaintiff Danuta Tuszynska, an attorney, provided legal representation to members of defendant Riverside Sheriffs' Association (RSA), under the auspices of defendant Riverside Sheriffs' Association Legal Defense Trust (RSA-LDT), a prepaid legal services plan that provides legal representation and related services to RSA members. Plaintiff filed suit against the RSA-LDT, the RSA, and James Cunningham, a former administrator of the RSA-LDT, alleging that, because she is a woman, she received fewer case referrals from the RSA-LDT after Cunningham became its administrator, and cases were instead referred to male attorneys with less experience than plaintiff.

Defendants moved to strike the entire complaint under the anti-SLAPP statute (the strategic lawsuit against public participation statute) (Code Civ. Proc., § 425.16)[1] on the ground its allegations were based on protected petitioning activities defendants undertook on behalf of RSA members, namely, (1) the RSA-LDT's selection of outside panel attorneys to represent RSA members, and (2) related decisions concerning whether and to what extent the RSA-LDT would fund RSA member litigation.

The trial court denied the motions, reasoning that plaintiff's allegations were not based on protected petitioning activities (§ 425.16, subd. (e)), but were instead based on defendants' "conduct" in failing to refer legal work to plaintiff *because* she is a woman. Thus, the court did not reach the second prong of the anti-SLAPP analysis; it did not consider whether plaintiff had met her evidentiary burden of demonstrating a reasonable probability of prevailing on the merits of her gender discrimination claims.

Defendants appeal, claiming the court erroneously determined that the allegations of the complaint were not based on protected activities. We agree. We conclude that plaintiff's allegations were based on communications and

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

statements defendants made "in connection with an issue under consideration or review by a . . . judicial body . . ." (§ 425.16, subd. (e)(2)), namely, defendants' attorney selection and litigation funding decisions on behalf of RSA members. We therefore reverse the order denying the motions and remand the matter with directions to determine whether plaintiff demonstrated a reasonable probability of prevailing on the merits of her gender discrimination claims.

## II.  BACKGROUND

### A.  *The Parties*

The RSA is the employee organization that represents law enforcement and public safety unit employees of the County of Riverside in collective bargaining with the county concerning the terms and conditions of the employees' employment. The RSA has around 2,900 members, including deputy sheriffs, sheriff's investigators, deputy coroners, correctional deputies, probation officers, and group counselors.

The RSA-LDT is an ERISA[2] trust or prepaid legal plan, which the RSA created in order to fund and provide legal representation and assistance to RSA members in job-related civil, criminal, and administrative matters. In exchange for RSA members' monthly fees, the RSA-LDT pays for and provides the members with an attorney and other legal services. The RSA-LDT is administered by a board of trustees, consisting of RSA members who meet monthly to discuss trust business. The RSA-LDT maintains a list or a panel of qualified attorneys who may be selected to represent the RSA in RSA-LDT-covered litigation.

Cunningham is an attorney who served as the executive director of the RSA from October 2003 to February 2010. Cunningham also served as the interim administrator for the RSA-LDT from November 2004 to July 2009, with the exception of an unspecified period beginning in September 2006, when another trust administrator served. In or about July 2009, Attorney Muna Busailah of Stone Busailah became the administrator.

Plaintiff entered private practice in 2001, following a 19-year career as a deputy district attorney for the County of Riverside. Around August 2003, Scott Teutscher, the legal operations manager for the RSA, and Riverside County Deputy Sheriff Duane Winchell "recruited" plaintiff to become an RSA-LDT panel member or contract attorney. Plaintiff signed a contract with Teutscher in September 2003 concerning the terms of her "representation as a panel attorney" for the RSA and the RSA-LDT, and providing she would be paid $200 per hour for her services.

---

[2] The Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.A. § 1001 et seq.).

B.   *Plaintiff's Allegations*

In three causes of action, plaintiff's complaint alleges that the RSA and Cunningham violated plaintiff's rights under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (first cause of action), and that all three defendants violated plaintiff's rights under the Unruh Civil Rights Act (Civ. Code, § 51, subd. (a)) (second cause of action) and article I, section 8 of the California Constitution (third cause of action). The complaint was filed in December 2009.

Plaintiff alleged that in 2003 she began representing Deputy Winchell in a criminal matter, and "successfully concluded the Winchell matter, convincing the Court to reduce the sole felony charge to a misdemeanor and to dismiss a stalking charge." In 2004, Martin Bruehl, the RSA-LDT administrator who preceded Cunningham, assigned plaintiff to represent Deputy Sheriff David Kushner in a criminal matter.

Around the 2003 to 2004 timeframe, plaintiff was the "only female trial attorney" on the RSA-LDT panel and the only panel attorney who had practiced in Riverside and was familiar with the local bar and legal community. Plaintiff "continually advised" male panel attorneys on local practices and procedures.

Around November 2004, after Cunningham replaced Bruehl as the administrator of the RSA-LDT, plaintiff's case assignments "dropped almost immediately." Her criminal case assignments "stopped coming entirely," and she was assigned "perhaps four brief administrative matters" over the course of two years. For several years, she "continually requested" that Cunningham assign her cases, "to no avail, although it was apparent that the male panel attorneys were regularly assigned cases." The male panel attorneys were assigned "all of the cases, criminal and administrative, that were reviewed by the [RSA-]LDT."

In 2008, Cunningham and RSA president, Pat McNamara, came to plaintiff's law office for a meeting. Plaintiff believed the purpose of the meeting was to assign her more cases and increase her involvement with the RSA-LDT, but instead she was "ambushed" and "chastised" at the meeting for "allegedly advising former deputy David Kushner to . . . challenge McNamara and Cunningham."

In May 2009, Deputy Kushner was convicted on two counts of an 18-count information, and Cunningham "openly blamed" plaintiff for "losing" Deputy Kushner's case. Cunningham refused to pay plaintiff's attorney fees for representing Deputy Kushner in a new trial motion and during sentencing,

overruling the recommendation of another RSA-LDT employee to continue funding Deputy Kushner's case.

At some point, plaintiff asked an RSA-LDT staff member why Cunningham would not assign her any cases, and the staffer replied that "it was still a good old boys club" and the staffer would try to get plaintiff more cases. Plaintiff further alleged that one RSA member was not provided coverage for an administrative appeal, "in part" because plaintiff was his attorney, and the RSA-LDT would not assign plaintiff to represent the same RSA member in another matter.

On another occasion, plaintiff was "made aware" that two deputy sheriffs had requested that the RSA-LDT assign plaintiff to represent them, but both requests were denied and the matters were assigned to male attorneys from outside Riverside County with less experience than plaintiff. Plaintiff claimed the new RSA-LDT administrators, Stone Busailah, "regularly assign new [RSA-]LDT cases to a member of their law firm, thereby garnering those fees to their firm, and double-dipping."

Plaintiff further alleged that the RSA-LDT "slandered" her in settling a case on behalf of former RSA member John Leseberg, who sued the RSA-LDT and its staff. According to plaintiff, Cunningham falsely informed the RSA-LDT board of trustees that plaintiff was "at fault in her handling of [Leseberg's] case, thereby authorizing a significant settlement to Leseberg." Finally, plaintiff alleged she stopped receiving the RSA newsletter in May 2009, and Reina Canales, the only female attorney "employed" by the RSA, "was fired by Cunningham so that a male employee would replace her."

## C. *Defendants' Anti-SLAPP Motions and Plaintiff's Oppositions*

In February 2010, the RSA-LDT and Cunningham filed an anti-SLAPP motion and the RSA and Cunningham filed a separate anti-SLAPP motion. Both motions sought to strike plaintiff's entire complaint, and each motion relied, in part, on the evidence adduced in support of the other motion. Defendants claimed the allegations of the complaint arose from protected petitioning activities undertaken by Cunningham and others on behalf of RSA members, namely, communications made in determining what attorneys should be selected to represent RSA members, and whether and to what extent the RSA-LDT should fund litigation on behalf of RSA members.

In opposition to the motions, plaintiff submitted a declaration supporting the allegations of her complaint, and argued her complaint had "nothing to do with the courtroom, nor clients, [nor] pending litigation," but "focus[es] on what was happening outside the courtroom, at RSA, when [plaintiff] attempted to be treated in the same manner as the male panel attorneys."

### D. *The Trial Court's Order Denying the Anti-SLAPP Motions*

The trial court denied the motions on the ground that plaintiff's allegations of gender discrimination did not arise from protected speech or petitioning activities under the anti-SLAPP statute. In its decision, the court wrote that the "gravamen" of plaintiff's claims was that "because she is a woman, she is not getting cases," and reasoned that plaintiff's claims were based on defendants' alleged "conduct" in failing to refer cases to her, rather than "communications" defendants made in connection with pending litigation.

The court also wrote that: "One of the other problems with applying the [anti-]SLAPP statute here is that, because the complaint really alleges a continuing problem between [plaintiff] and Cunningham with little impact on or intervention by third parties, there are no limits to the scope of [anti-]SLAPP protection defendants seek. Taken to its extreme, defendants' argument is really that, because [plaintiff] had a contract to perform legal services at Cunningham's direction, any conversations between the two of them or any comments by Cunningham about [plaintiff] qualify as statements made in connection with matters under consideration or review before a judicial proceeding. The staggering scope of this argument counsels caution in deciding to what extent, if any, section 425.16[, subdivision] (e)(2) applies." The court thus concluded that plaintiff's alleged "exclusion from appointments is not conduct 'in furtherance of the exercise of the constitutional right to petition.' "

## III. DISCUSSION

### A. *Section 425.16*

A SLAPP suit seeks to chill or punish the exercise of the constitutional rights to freedom of speech and to petition the government for redress of grievances. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055 [39 Cal.Rptr.3d 516, 128 P.3d 713]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1 [81 Cal.Rptr.2d 471, 969 P.2d 564].) In enacting section 425.16, the Legislature created a special motion to strike, also known as an anti-SLAPP motion, as a procedural means of disposing of SLAPP suits at the earliest possible stage of the litigation. (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443 [122 Cal.Rptr.3d 73].)

Section 425.16 prescribes a two-step process for striking a cause of action. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) "First the court decides whether the defendant has made a threshold showing that the challenged cause of action is one

arising from protected activity. (§ 425.16, subd. (b)(1).)[3] 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)'[4] [citation]." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) A cause of action arises from protected activity if "the defendant's acts underpinning the plaintiff's cause of action involve[s] an exercise of the right of petition or free speech." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP, supra*, 193 Cal.App.4th at p. 443.)

If the defendant makes this showing, the court proceeds to the second step of the anti-SLAPP analysis. (*Navellier, supra*, 29 Cal.4th at p. 88.) In the second step, the court decides whether the plaintiff has demonstrated a reasonable probability of prevailing at trial on the merits of its challenged causes of action. (*Ibid.*; *Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1271 [99 Cal.Rptr.3d 805].)

■ Conversely, if the defendant does not meet its burden on the first step, the court should deny the motion and need not address the second step. (*City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594 [66 Cal.Rptr.3d 862] [Fourth Dist., Div. Two].) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra*, 29 Cal.4th at p. 89.)

## B. *Jurisdiction and Standard of Review*

■ An order denying an anti-SLAPP motion is immediately appealable. (§§ 425.16, subd. (i), 904.1, subd. (a)(13).) On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of

---

[3] Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[4] Section 425.16, subdivision (e) provides that, as used in the statute, the phrase, " 'act in furtherance of a person's right of petition or free speech' " "includes" four categories of protected speech and petitioning activities, namely: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step. (*Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1270 [40 Cal.Rptr.3d 867].)

Here, we conclude defendants met their burden on the first step, but the trial court reached a contrary conclusion and did not address whether plaintiff met her evidentiary burden on the second step. Thus we remand the matter to the trial court to determine, in the first instance, whether plaintiff demonstrated a reasonable probability of prevailing on the merits of her three causes of action. (See *Navellier, supra*, 29 Cal.4th at p. 95.)

C. *The Gravamen of the Claim Controls Application of the Anti-SLAPP Law*

■ "Our Supreme Court has recognized the anti-SLAPP statute should be broadly construed [citation] and that a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a garden variety tort or contract claim when in fact the claim is predicated on protected speech or petitioning activity. [Citation.] Accordingly, we disregard the labeling of the claim [citation] and instead 'examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion. [Citation.] We assess the principal thrust by identifying '[t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation for the claim.' [Citation.] If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. [Citation.]" (*Hylton v. Frank E. Rogozienski, Inc., supra*, 177 Cal.App.4th at pp. 1271–1272.)

As our Supreme Court has stressed, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech. [Citations.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) "In other words, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 670 [35 Cal.Rptr.3d 31].)

D. *Plaintiff's Allegations Are Based on Protected Activities (§ 425.16, subd. (e)(2))*

Defendants argue that the allegations of plaintiff's three causes of action, each of which allege defendants discriminated against plaintiff by failing to

assign legal cases to her "because she is a woman," are based on protected speech and petitioning activities defendants undertook on behalf of RSA members, namely, defendants' activities (1) in selecting attorneys to represent RSA members in RSA-LDT-covered litigation, and (2) in deciding whether and if so to what extent the RSA-LDT should fund litigation on behalf of RSA members. (§ 425.16, subd. (e)(2).) We agree.

■ First, defendants' attorney selection and litigation funding decisions constitute statements or writings "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(2).) ■ As such, the decisions constitute protected speech and petitioning activities, even though they were made on behalf of RSA members and clients of the RSA-LDT and not on behalf of defendants themselves. (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1056 [act in furtherance of free speech or petitioning includes "communicative conduct" such as filing, funding, and prosecution of litigation]; *Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1116 [anti-SLAPP statute "does not require that a defendant . . . demonstrate that its protected statements or writings were made *on its own behalf* (rather than, for example on behalf of its clients or the general public)."].)

Plaintiff does not seriously dispute that defendants' attorney selection and litigation funding decisions, and *any* communications made in connection with those decisions, constitute protected speech and petitioning activities. (§ 425.16, subd. (e).) Rather, she claims her allegations of gender discrimination are not based on any such communications but are instead based on defendants' purportedly distinctive "conduct" in failing to assign cases to her "because she is a woman." The trial court agreed. In denying the anti-SLAPP motions, the court reasoned that the "gravamen" of plaintiff's claims was that "because she is a woman, she is not getting cases."

Plaintiff and the trial court thus drew a critical distinction between plaintiff's claim that she was not getting cases *because* she was a woman, on the one hand, and the communications defendants made in connection with making their attorney selection and funding decisions, on the other. This distinction conflates defendants' alleged injury-producing conduct—their failure to assign new cases to plaintiff and their refusal to continue funding cases previously assigned to her—with the unlawful, gender-based discriminatory *motive* plaintiff was ascribing to defendants' conduct—that plaintiff was not receiving new assignments or continued funding *because* she was a woman.

■ This type of distinction is untenable in the anti-SLAPP context because it is at odds with the language and purpose of the anti-SLAPP

statute. The statute applies to claims "based on" or "arising from" statements or writings made in connection with protected speech or petitioning activities, regardless of any motive the defendant may have had in undertaking its activities, or the motive the plaintiff may be ascribing to the defendant's activities. (*Navellier, supra*, 29 Cal.4th at pp. 89–90; § 425.16, subds. (b)(1), (e).)[5] ▓ The statute is also to be broadly construed so that it may best serve its legislative purpose of encouraging continued participation in speech and petitioning activities. (*Briggs v. Eden Council for Hope & Opportunity, supra*, 19 Cal.4th at p. 1119; § 425.16, subd. (a).)

Plaintiff is suing defendants for gender discrimination, because she claims they did not assign case work to her and refused to continue funding case work previously assigned to her *because* she is a woman. Her gender discrimination claims are thus based squarely on defendants' attorney selection and litigation funding decisions themselves, and, concomitantly, communications defendants made in connection with making those decisions. Whether defendants had a gender-based discriminatory motive in not assigning new cases to plaintiff or in defunding her existing cases is a question that is entirely separate and distinct from whether, under the anti-SLAPP statute, plaintiff's gender discrimination claims are *based on* defendants' selection and funding decisions. Courts must be careful not to conflate such separate and distinct questions.

▓ In *Navellier*, the court recognized that the plaintiff, in attempting to avoid the application of the anti-SLAPP statute, was positing a *"false dichotomy* between actions that target 'the formation or performance of contractual obligations' and those that target 'the exercise of the right of free speech.' " (*Navellier, supra*, 29 Cal.4th at p. 92, italics added.) The court stressed that "[a] given action, or cause of action, may indeed target both. . . . [C]onduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning." (*Ibid.*) Thus, "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Ibid.*)

In the case before it, the court explained that: "[Defendant] is being sued because of the affirmative counterclaims he filed in federal court. In fact, but for the federal lawsuit and [defendant]'s alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action

---

[5] "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Navellier, supra*, 29 Cal.4th at p. 89; see § 425.16, subd. (b)(2).)

therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong. [Citation.]" (*Navellier, supra*, 29 Cal.4th at p. 90, fn. omitted.) Here too, plaintiff's gender discrimination claims would have no basis in the absence of defendants' attorney selection and litigation funding decisions *themselves*. Thus here, defendants' selection and funding decisions constitute the gravamen, principal thrust, and core injury-producing conduct underlying plaintiff's gender discrimination claims. (*Hylton v. Frank E. Rogozienski, Inc., supra*, 177 Cal.App.4th at p. 1272.)

The present case is also analogous to *Taheri Law Group v. Evans* (2008) 160 Cal.App.4th 482 [72 Cal.Rptr.3d 847], a "client stealing" case in which a law firm sued an attorney, Evans, for improperly soliciting the firm's client. The firm alleged that Evans induced the client to terminate his relationship with the firm by unethically and improperly promising the client that he, Evans, would be able to enforce a settlement agreement on behalf of the client, which the client wanted to enforce. (*Id.* at pp. 485–486.) The firm had advised the client that the settlement agreement was unenforceable because it had been repudiated. (*Id.* at p. 486.) The court rejected the firm's claim that the gravamen of its complaint was "client stealing," and concluded that the firm's claims "ar[o]se directly from communications" between the client and Evans "about the pending lawsuits against [the client]." (*Id.* at p. 489; see § 425.16, subd. (b)(2).) The court said: "[I]t is difficult to conjure a clearer scenario than the case before us of a lawsuit arising from protected activity." (*Taheri Law Group v. Evans, supra*, at p. 489.) In the absence of the communications between Evans and the client about the pending lawsuits against the client, the plaintiff law firm's client-stealing allegations would have had no basis in fact.

Other cases are similarly analogous. (See, e.g., *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1397 [53 Cal.Rptr.3d 647] [plaintiff's sex discrimination claim was based on defendant's "communicative conduct in denying plaintiff's grievances" and not on any act independent of that communicative conduct]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, supra*, 133 Cal.App.4th at pp. 671, 673 [plaintiffs' professional malpractice and breach of fiduciary duty claims against law firm were based on firm's petitioning activities, not on acts independent of those activities].)

Still other cases stand in contrast to the present case, because they involved claims not based on protected activities. (See, e.g., *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273 [117 Cal.Rptr.3d 153] [plaintiff's breach of fiduciary duty and related business tort claims were based on business partners' acts in mismanaging and misspending corporate funds; partners' acts of hiring attorneys and investigators were incidental to those claims]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 631 [7

Cal.Rptr.3d 715] [attorney malpractice claim was based on attorney's failure to file timely discovery responses and comply with court order, and not on attorney's petitioning activity itself].)

■ All of these cases demonstrate that the distinction the trial court drew between plaintiff's allegation that she was not receiving new case assignments because she was a woman, and communications defendants made in connection with making their selection and funding decisions, was an eminently understandable but erroneous distinction to draw. It is indeed easy to confuse a defendant's alleged injury-producing conduct with the unlawful motive the plaintiff is ascribing to that conduct. This confusion will be less likely to occur, however, if on the first step of the anti-SLAPP inquiry the court's focus remains squarely on the defendant's activity that gave rise to its asserted liability, and whether that activity constitutes protected speech or petitioning, rather than on any motive the plaintiff may be ascribing to the activity. (*Navellier, supra*, 29 Cal.4th at p. 92.)

It is settled that a cause of action may be based on protected activity for purposes of the anti-SLAPP statute, even if the plaintiff had no intention of chilling the defendant's free exercise of its speech or petition rights in suing the defendant. (*Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 536–537 [59 Cal.Rptr.3d 109] [anti-SLAPP statute contains "no requirement" that suit be brought with specific intent to chill exercise of free speech or petitioning rights]; *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734 [3 Cal.Rptr.3d 636, 74 P.3d 737] [state Supreme Court has consistently rejected proposals to judicially engraft a specific intent to chill requirement onto the anti-SLAPP statute].) Just as the plaintiff's intent in suing a defendant is irrelevant in determining whether the plaintiff's cause of action is based on the defendant's protected activities, the defendant's purported motive in undertaking speech and petitioning activities is irrelevant in determining whether the plaintiff's cause of action is based on those activities.

■ In sum, defendants met their burden on the first step of the anti-SLAPP inquiry. Their attorney selection and litigation funding decisions constitute protected petitioning activities (§ 425.16, subd. (e)(2)), and plaintiff's gender discrimination claims are based on those activities. Because the trial court reached a contrary conclusion and accordingly did not consider whether plaintiff met her burden of demonstrating a reasonable probability of prevailing on her claims, we remand the matter so the trial court can make that determination in the first instance. (See *Navellier, supra*, 29 Cal.4th at p. 95.)

## IV.   DISPOSITION

The order denying defendants' anti-SLAPP motions is reversed. The matter is remanded to the trial court with directions to determine whether plaintiff met her evidentiary burden of demonstrating a reasonable probability of prevailing on the merits of her claims on the second step of the anti-SLAPP analysis. The parties shall bear their respective costs on appeal.

Richli, Acting P. J., and Codrington, J., concurred.